UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:                                                                          Chapter 11

                                                                                Case No. 14 -11192 (SCC)
CD STORES, LLC, *et al.*,
                                                                                (Jointly Administered)

                                        Debtors.
-------------------------------------------------------------------x


# FIRST AMENDED
## JOINT PLAN OF REORGANIZATION
## FOR CD STORES, LLC, *ET AL.* UNDER
## <u>CHAPTER 11 OF THE BANKRUPTCY CODE</u>


**SILVERMANACAMPORA LLP**
Attorneys for CD Stores, LLC, *et al.*
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Gerard R. Luckman
Sheryl P. Giugliano


Dated as of: July 17, 2014

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 14 - 11192 (SCC) |
| CD STORES, LLC, *et al.*, | (Jointly Administered) |
| Debtors. | |

-----------------------------------------------------------------x

## FIRST AMENDED
## JOINT PLAN OF REORGANIZATION
## FOR CD STORES, LLC, *ET AL.* UNDER
## CHAPTER 11 OF THE BANKRUPTCY CODE

This First Amended Joint Plan of Reorganization is proposed and filed by CD Stores, LLC, CD Store 125th, LLC, CD Store Atlantic Terminal, LLC, CD Store Roosevelt Field, LLC, CD Store Pentagon City LLC, CD Store Newport Centre, LLC, CD Store Fox Hills, LLC, and CD Store Lenox Square, LLC, the above-captioned debtors and debtors in possession pursuant to chapter 11 of the Bankruptcy Code.[1]  The Plan provides for the reorganization and restructuring of Debtors CD Stores, LLC, CD Store 125th, LLC, and CD Store Atlantic Terminal, LLC, liquidation of the remaining Debtors, payment of Allowed Claims consistent with the distribution scheme set forth in the Bankruptcy Code, and procedures for the resolution of Disputed Claims. In addition, the Plan provides that holders of Allowed General Unsecured Claims against the Debtors will receive a Distribution of Cash on the Effective Date in full satisfaction of their Allowed Claims, as set forth below.

# ARTICLE I

## DEFINITIONS

For purposes of the Plan, the following terms shall have the meanings set forth below. Terms used in this Plan which are defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth in the Bankruptcy Code or the Bankruptcy Rules unless defined in this Plan. The meaning of the defined terms shall be equally applicable to the singular and plural forms of the terms defined, unless a different meaning is clearly required by and explained in the text.

1.01    "Administrative Expense" shall mean any cost or expense of administration of the Chapter 11 Cases entitled to priority in accordance with the provisions of Bankruptcy Code §§ 503(b) and 507(a)(1), including, without limitation: (i) Fee Claims; (ii) Claims relating to goods received by any of the Debtors within twenty (20) days before the Petition Date in the ordinary course of the Debtors' business; and (iii) any actual, necessary costs and expenses of preserving the Debtors' Estates and of operating the Debtors' business (but only to the extent they are due or payable on or before the Effective Date).

1.02    "Affiliate" shall have the meaning set forth in Bankruptcy Code § 101(2), and includes CD Holdings and CD Product.

---

[1]  All capitalized terms used but not defined in the text of this Plan shall have the meanings set forth in Article I of the Plan.

1.03    "Affiliate Claim" shall mean any Claim of an Affiliate of the Debtor, including but not limited to the CD Product Claim.

1.04    "Allowed" shall mean a Claim, other than an Administrative Expense or Interest in any of the Debtors, which is: (i) listed in one of the Debtors' Schedules filed in the Chapter 11 Cases as of the Effective Date, and not listed in the Schedules as disputed, contingent, unliquidated or unknown and as to which no objection to the allowance thereof is filed on or prior to the Objections Bar Date; (ii) set forth in a proof of Claim timely and properly filed in the Chapter 11 Cases on or before the date fixed by the Bankruptcy Court (or by applicable rule or statute) as the last day for filing such proof of Claim, or late filed with leave of the Bankruptcy Court after notice and opportunity for hearing given to counsel to the Debtors, and as to which no objection to the allowance thereof is filed on or prior to the Objections Bar Date; or (iii) determined to be allowed by a Final Order of the Bankruptcy Court.  To the extent permitted under Bankruptcy Code § 506(b), an Allowed Claim shall include unpaid interest on the Claim and any reasonable unpaid fees, costs or charges provided for under the agreements under which such Claim arose. Any Claim which has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered an Allowed Claim and shall be expunged without further action by the Debtors or the Post-Confirmation Debtors.

1.05    "Allowed Administrative Expense" shall mean all or that portion of any Administrative Expense which has been Allowed by a Final Order of the Bankruptcy Court.

1.06    "Allowed General Unsecured Claim" shall mean any Allowed Claim that is not an Allowed Administrative Expense, Allowed Fee Claim, Allowed Priority Tax Claim, Allowed Priority (Non-Tax) Claim, or Affiliate Claim.

1.07    "Allowed Priority Claim" shall mean any Allowed Claim or portion thereof entitled to priority under Bankruptcy Code §§ 507(a)(3) through (a)(6).

1.08    "Allowed Priority Tax Claim" shall mean any Allowed Claim or portion thereof entitled to priority under Bankruptcy Code § 507(a)(8).

1.09    "Avoidance Actions" shall mean any and all claims, suits and causes of action now held or hereafter acquired by the Debtors, their Estates, the Post-Confirmation Debtors, or the Debtors' creditors (a) under Bankruptcy Code §§ 544, 547, 548, 549 or 550, and (b) any transferee of a transfer avoidable under Bankruptcy Code § 549 received from the Debtors from and after the Petition Date, but prior to the Effective Date.

1.10    "Bankruptcy Code" shall mean title 11 of the United States Code, as amended.

1.11    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York, in which the Debtors' Chapter 11 Cases are pending, and the United States District Court for the Southern District of New York to the extent that in respect of the Chapter 11 Cases the District Court may have withdrawn reference, shall have determined to exercise original jurisdiction, or shall have sole authority to enter a final order or judgment.

1.12    "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure.

1.13    "Business Day" shall mean any day other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

1.14    "Cash" shall mean cash and cash equivalents, and other readily marketable securities or instruments, including, but not limited to, bank deposits, checks and other similar items.

SPG/1571982/063881

1.15    "CD Holdings" shall mean Carol's Daughter Holdings, LLC, the holder of 100% of the interests in CD Stores, LLC and CD Product.

1.16    "CD Holdings Contribution" shall mean the contribution to be made by CD Holdings, only if this Plan is confirmed, in exchange for 100% of the interests in the Reorganized Debtor CD Stores, LLC, in the form of (i) payment of Cash in the amount of $150,000 to fund the Distributions to be made under the Plan, and (ii) subordination of the CD Product Claim, solely in right of payment but not the right of setoff or any defenses, to payment of the Class 2 Allowed Claims in accordance with the provisions of the Plan.

1.17    "CD Product" shall mean Carol's Daughter Product, LLC, an Affiliate of CD Stores, LLC.   Prior to the Petition Date, CD Holdings funded the Debtors' operating deficit through CD Product.

1.18    "CD Product Claim" shall mean the $6,985,995.00 General Unsecured Claim held by CD Product against CD Stores, LLC for funding the Debtors' operating deficit prior to the Petition Date.  CD Holdings, as the sole interest holder of CD Product, will subordinate the CD Product Claim to solely in right of payment, but not in right of setoff or any defenses, to payment of the Allowed Class 2 Claims in accordance with the provisions of the Plan.

1.19    "CD Stores Claims" shall mean the General Unsecured Claims held by CD Stores, LLC for funds advanced for operating deficits, as follows: (i) CD Store 125th LLC in the amount of $1,945,086.00; (ii) CD Store Roosevelt LLC, in the amount of $1,080,464.00; (iii) CD Store Pentagon City LLC in the amount of $576,488.00; (iv) CD Store Newport Centre, LLC in the amount of $959,184.00; (v) CD Store Fox Hills, LLC in the amount of $1,383,430.00; and (vi) CD Store Lenox Square, LLC in the amount of $1,040,344.00.   The CD Stores Claims will be subordinated solely in right of payment, but not in right of setoff or defenses, to payment of the Allowed Class 2 Claims in accordance with the provisions of the Plan.

1.20    "CD Stores Contribution" shall mean the contribution to be made by CD Stores, LLC, if this Plan is confirmed, in exchange for 100% of the interests in the Reorganized Debtors CD Store 125th, LLC and CD Store Atlantic Terminal, and the remaining Post-Confirmation Debtors, in the form of (i) Distribution of the Class 2 Payment, (ii) subordination of the CD Stores Claims, solely in right of payment, but not in right of setoff or any defenses, to payment of the Allowed Class 2 Claims in accordance with the provisions of the Plan, and (iii) the continued guaranty of the obligations due by Reorganized Debtor CD Store 125th, LLC's under its lease agreement for its premises.

1.21    "Chapter 11 Cases" shall mean the Debtors' chapter 11 cases filed in the Bankruptcy Court, and jointly administered under Case No. 14-11192 (SCC).

1.22    "Claim" shall mean a claim against the Debtors, as defined in Bankruptcy Code § 101(5).

1.23    "Claimant" shall mean the holder of a Claim.

1.24    "Class" shall mean any class into which Allowed Claims and Allowed Interests are classified pursuant to Article II of the Plan.

1.25    "Class 2 Payment" means the Distribution, in Cash, to be made as soon as practicable after the Effective Date from the Cash portion of the CD Holdings Contribution to holders of Allowed Class 2 Claims under the Plan on a pro rata basis, after payment of (i) Administrative Expenses (including Allowed Fee Claims), (ii) U.S. Trustee Fees, (iii) any initial payments due on account of Priority Tax Claims, (iv) Class 1 Allowed Priority (Non-Tax) Claims, and (v) reserves necessary to administer the provisions of the Plan, in accordance with the provisions of the Plan.

SPG/1571982/063881

1.26    "Confirmation Date" shall mean the date the Confirmation Order is entered in the Chapter 11 Cases.

1.27    "Confirmation Hearing" shall mean the hearing or hearings held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.28    "Confirmation Order" shall mean an Order of the Bankruptcy Court confirming the Plan in accordance with Bankruptcy Code § 1129.

1.29    "Creditor" shall have the meaning set forth in Bankruptcy Code § 101(10).

1.30    "Debtors" shall mean, as debtors and debtors-in-possession in the Chapter 11 Cases, the following: (i) CD Stores, LLC; (ii) CD Store 125th, LLC; (iii) CD Store Atlantic Terminal, LLC; (iv) CD Store Roosevelt Field, LLC; (v) CD Store Pentagon City LLC; (vi) CD Store Newport Centre, LLC; (vii) CD Store Fox Hills, LLC; and (viii) CD Store Lenox Square, LLC.

1.31    "Disallowed Claim" shall mean any Claim or portion of a Claim which has been disallowed by a Final Order of the Bankruptcy Court.

1.32    "Disputed Claim" shall mean any Claim, proof of which was timely and properly filed, and (a) which is listed on the Schedules as unliquidated, disputed, or contingent, and which has not been resolved by written agreement between the Debtors and the Claimant or by an order of the Bankruptcy Court, (b) which is subject to a dispute to the extent that the Debtors or the Post-Confirmation Debtors have asserted a claim against the holder of the Disputed Claim, or (c) as to which the Debtors have interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order.  Prior to the filing of an objection to a Claim, or the expiration of the time within which to object to such Claim set forth in the Plan or otherwise established by order of the Bankruptcy Court, for purposes of the Plan, a Claim shall be considered a Disputed Claim if (x) the amount of the Claim specified in the proof of Claim exceeds the amount of the Claim scheduled by the Debtors as other than disputed, contingent or unliquidated, or (y) the Claim is not listed on the Schedules.

1.33    "Disputed Claims Reserve" shall mean the reserves to be established by the Post-Confirmation Debtors on account of Disputed Administrative Expenses Claims, Disputed Priority Claims, and Disputed Unsecured Claims to be used to make pro rata Distributions to holders of Disputed Claims and Undetermined Claims in the event they become Allowed Claims.

1.34    "Distribute" or "Distribution" shall mean a payment by the Post-Confirmation Debtors under the terms of the Plan.

1.35    "Effective Date" shall mean the first day on which the Confirmation Order has become a Final Order and on which all of the conditions to the Effective Date in the Plan have been satisfied or waived.

1.36    "Estates" shall mean the Debtors' chapter 11 estates created on the Petition Date under Bankruptcy Code § 541.

1.37    "Estimation Order" shall mean an order of the Bankruptcy Court estimating for voting or distribution purposes, under Bankruptcy Code § 502(c), the allowed amount of any Claim in the Chapter 11 Case.  An Estimation Order may include the Confirmation Order if the Confirmation Order grants the same relief that would have been granted in a separate Estimation Order.

SPG/1571982/063881

1.38    "Fee Claims" shall mean claims by professionals retained by the Debtor during the Chapter 11 Cases for the payment of fees and the reimbursement of expenses incurred prior to the Effective Date.

1.39    "Final Order" shall mean: (i) an order or a judgment of the Bankruptcy Court; or (ii) a stipulation or other agreement entered into which is "so ordered" by the Bankruptcy Court, the operation or effect of which has not been reversed, stayed, modified or amended and as to which (x) any appeal that has been taken has been finally determined or dismissed or (y) the time to appeal or seek reconsideration has expired by reason of statute or otherwise and as to which no appeal or petition for review, *certiorari* or reconsideration has been taken or is pending (or if such appeal or petition has been granted, it has been finally decided), as a result of which such order, judgment, stipulation or agreement shall have become final in accordance with applicable law.

1.40    "General Unsecured Claim" means an Allowed Claim that is not an Administrative Expense, a Priority (Non-Tax) Claim, Priority Tax Claim, Fee Claim, or Affiliate Claim.

1.41    "Interest" shall mean any rights of a holder of a membership interest in respect of an equity interest in any of the Debtors.

1.42    "Lien" shall have the meaning set forth in Bankruptcy Code § 101(37).

1.43    "Objections Bar Date" shall mean the deadline for the Post-Confirmation Debtors to file objections to Claims, which deadline shall be the first business day that is one hundred and twenty (120) days after the Effective Date of the Plan.

1.44    "Person" shall have the meaning set forth in Bankruptcy Code § 101(41).

1.45    "Petition Date" shall mean April 24, 2014.

1.46    "Plan" shall mean this First Amended Joint Plan of Reorganization as it may be amended or modified.

1.47    "Post-Confirmation Debtors" shall mean the Debtors after the Confirmation Date.

1.48    "Priority (Non-Tax) Claims" shall mean any Claim that is entitled to priority status in accordance with Bankruptcy Code § 507(a), other than Priority Tax Claims and Administrative Expenses.

1.49    "Priority Tax Claims" shall mean any Claim for taxes entitled to priority status in accordance with Bankruptcy Code §§ 502(i) or 507(a)(8), but specifically excludes any penalty assessed with respect to such taxes.

1.50    "Pro Rata Share" shall mean the proportion that the Allowed Claim bears to the sum of all Allowed Claims, Disputed Claims and Undetermined Claims of that particular Class.

1.51    "Released Parties" shall have the meaning set forth in Article XI of the Plan.

1.52    "Reorganized Debtors" shall mean those certain Post-Confirmation Debtors that will continue to operate after the Confirmation Date, which are: CD Stores, LLC; CD Store 125th, LLC; and CD Store Atlantic Terminal, LLC.

1.53    "Schedules" shall mean the schedules of assets and liabilities, lists and statement of financial affairs and executory contracts filed by the Debtors with the Bankruptcy Court, as they may be amended pursuant to the Bankruptcy Rules.

1.54    "Unclaimed Property" shall mean any Cash (together with any interest earned thereon) unclaimed on the later of the 90th day following the Effective Date or the last

SPG/1571982/063881

Distribution Date. Unclaimed Property shall include checks (and the funds represented thereby): (i) which have been returned as undeliverable without proper forwarding addresses; (ii) which have not been paid; or (iii) which were not mailed or delivered because of the absence of a proper address for the Claimant.

1.55    "Undetermined Claim" shall mean any Claim that is (i) a Disputed Claim or (ii) an unliquidated or contingent Claim.

1.56    "Unsecured Creditor" shall mean the holder of an Unsecured Claim.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    General Rules of Classification.  A Claim or Interest is classified in a particular Class for voting and distribution purposes only to the extent the Claim or Interest qualifies within the description of that Class, and is classified in other Classes to the extent the Claim or Interest qualifies within the description of such Classes.

2.02    Administrative Expenses and Priority Tax Claims.  Administrative Expenses and Priority Tax Claims have not been classified and are excluded from the Classes of Claims in accordance with Bankruptcy Code § 1123(a)(1).

2.03    Satisfaction of Claims and Interests. The treatment to be provided for Allowed Claims and Interests under this Plan and the consideration provided under this Plan shall be in full satisfaction, settlement, release and discharge of all Claims and Interests against the Debtors and their property.

2.04    Bar Dates for Claims. Pursuant to the Bankruptcy Court's Order, dated May 13, 2014 (ECF Doc. No. 28), all non-governmental unit Claims against the Debtors were to be filed on or before June 20, 2014, and all Claims of governmental units were to be filed on or before October 21, 2014.  Claims arising from the rejection of executory contracts and unexpired leases shall be governed by the specific orders of the Bankruptcy Court regarding the assumption or rejection of executory contracts and unexpired leases and Article VI of the Plan.

2.05    Bar Date for Fee Claims. The Confirmation Order or the order scheduling the Confirmation Hearing shall provide a deadline for the filing of requests for payment of Fee Claims incurred prior to the Confirmation Date.  Any Person that fails to file an application for the payment of professional fees and expenses on or before the time and date established in the Confirmation Order or the order scheduling the Confirmation Hearing shall be forever barred from seeking payment or reimbursement from the Debtors, their Estates or the Post-Confirmation Debtors.

2.06    Acceptance of Classification.  Any holder of a Claim or Interest who fails to object in writing to the classification of Claims and Interests provided in the Plan, and who has not filed an objection with the Bankruptcy Court and served the objection upon counsel to the Debtors, and the U.S. Trustee at least ten (10) days prior to the Confirmation Hearing shall be deemed to have accepted the classification set forth in the Plan.

2.07    Classification.  For purposes of the Plan, all Allowed Claims shall be placed in the following Classes:

> ➢ Class 1 (Allowed Priority (Non-Tax) Claims)
> ➢ Class 2 (Allowed General Unsecured Claims)
> ➢ Class 3 (Affiliate Claims)
> ➢ Class 4 (Interests in the Debtors)

SPG/1571982/063881

# ARTICLE III

## TREATMENT OF CLASSES

3.01    Administrative Expenses.  Administrative Expenses are not impaired.  All Allowed Administrative Expenses, including Fee Claims, shall be paid by the Post-Confirmation Debtors from the Cash portion of the CD Holdings Contribution on the later to occur of (a) the Effective Date, and (b) the date such Claim becomes Allowed by a Final Order of the Bankruptcy Court, or as soon as practicable thereafter, or upon such other terms as may be agreed to by the holder thereof and the Debtors.  In the event of any subsequent conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, all payments on account of any Allowed Administrative Expenses shall be deemed to have been made in the ordinary course of the Debtors' business and shall not be deemed to be avoidable transfers under Bankruptcy Code § 547. Holders of Allowed Administrative Expenses shall not be entitled to vote on the Plan.

3.02    U.S. Trustee Fees.  Statutory fees, and any applicable interest thereon, are all fees payable pursuant to Chapter 123 of Title 28, United States Code, including, but not limited to, all fees required to be paid by 28 U.S.C. § 1930(a)(6) and any interest thereon pursuant to 31 U.S.C. §3717 ("**U.S. Trustee Fees**").  U.S. Trustee Fees will accrue and be timely paid until the Cases are closed, dismissed, or converted to another chapter under the Bankruptcy Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid in full on the Effective Date of the Plan.  The Post-Confirmation Debtors shall remain responsible for any and all U.S. Trustee fees that become due and shall pay same on a timely basis.

3.03    Priority Tax Claims.  Priority Tax Claims are not impaired.  All Allowed Priority Tax Claims shall be paid from the Cash portion of the CD Holdings Contribution on the Effective Date unless such claims are Allowed in an amount significantly greater than estimated or in an amount that would jeopardize a recovery to unsecured creditors, then over a five (5) year period in accordance with Bankruptcy Code §1129(a), at the prime rate of interest per annum as set forth in the Wall Street Journal, or other comparable publication.  Holders of Priority Tax Claims shall not be entitled to vote on the Plan.  The deadline by which governmental entities are entitled to file tax claims is October 21, 2014.

3.04    Class 1 Allowed Priority (Non-Tax) Claims.  Allowed Priority (Non-Tax) Claims shall be paid on the Effective Date, or as soon thereafter as is reasonably practicable, in full, without interest, and may be pre-paid by the Debtors as long as each Holder of an Allowed Priority (Non-Tax) Claim does not receive more than the statutory limit allowed under Bankruptcy Code § 507(a)(4).  The Debtors do not believe any such claim exists In accordance with Bankruptcy Code § 1126(f), holders of Class 1 Claims shall not be entitled to vote on the Plan and shall be deemed to have accepted the Plan. Class 1 Claims are not impaired.

3.05    Class 2 General Unsecured Claims. Class 2 Claims are comprised of the Allowed Claims of General Unsecured Creditors. Each holder of an Allowed General Unsecured Claim shall receive Distributions of its Pro Rata Share of the Class 2 Payment in full satisfaction of its Allowed Claim. Class 2 Claims are impaired and holders of Class 2 Claims are entitled to vote on the Plan.

3.06    Class 3 Claims of CD Product and CD Stores, LLC.  Class 3 Claims consist of the Allowed Affiliate Claims of CD Product and CD Stores, LLC. If this Plan is confirmed, the Class 3 Claims will be subordinated, solely in right of payment, but not the right of setoff or any defenses, Allowed Administrative Expenses, U.S. Trustee Fees, Priority Tax Claims, Class 1

SPG/1571982/063881

Allowed Priority (Non-Tax Claims), and Class 2 General Unsecured Claims under the Plan, as part of the CD Holdings Contribution and CD Stores Contribution. No payments will be made in respect of the Class 3 Claims unless and until Class 2 Claims have been paid in full under the Plan. Pursuant to Bankruptcy Code § 1126(g), holders of Class 3 Claims are entitled to vote on the Plan. Class 3 Claims are impaired.

3.07     Class 4 Interests. In consideration for the CD Holdings Contribution, CD Holdings shall retain 100% of the Interests in the Reorganized Debtor CD Stores, LLC. In consideration for the CD Stores Contribution, Reorganized Debtor CD Stores, LLC shall retain 100% of the Interests in the remaining Reorganized Debtors and Post-Confirmation Debtors. Class 4 Interest holders are not entitled to vote and shall be deemed to have accepted the Plan. Class 4 Interests are not impaired.

## ARTICLE IV

### CLAIMS AND INTERESTS IMPAIRED UNDER THE PLAN

4.01     Claims in Classes 2 and 3 are impaired under the Plan. The holders of Claims in Classes 2 and 3 are entitled to vote on the Plan. Claims in Class 1, and Interests in Class 4 are not impaired and shall be deemed to have accepted the Plan.

4.02     Pursuant to Bankruptcy Code § 1126(c), a Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the holders of allowed Claims in such Class that vote on the Plan.

4.03     To the extent that any Class rejects the Plan, the Debtors intend to seek confirmation of the Plan in accordance with Bankruptcy Code § 1129(b).

## ARTICLE V

### MEANS FOR IMPLEMENTATION OF THE PLAN

5.01     No later than two (2) business days before the Confirmation Date, the Cash portion of the CD Holdings Contribution shall be deposited into a separate account maintained by CD Product.

5.02     On the Effective Date or as soon thereafter as is reasonably practical, the Cash portion of the CD Holdings Contribution shall be deposited by CD Product into an account maintained by CD Stores, LLC.

5.03     On the Effective Date, the Post-Confirmation Debtors shall have the Cash necessary to pay in full Allowed Administrative Claims, including Allowed Fee Claims (except to the extent that the holders of Administrative Expense or Fee Claims agree to different treatment), and except as otherwise provided in the Plan, Allowed Priority (Non-Tax) Claims, and any initial payments due on Allowed Priority (Tax) Claims.

5.04     On the Effective Date or as soon thereafter as is reasonably practicable, the Post-Confirmation Debtors shall take possession of the Class 2 Payment for Distribution to holders of Allowed Claims under the Plan.

5.05     The Class 2 Payment shall be funded by the Cash portion of the CD Holdings Contribution, after payment of (i) Administrative Expenses (including Allowed Fee Claims), (ii) US Trustee Fees, (iii) Class 1 Allowed Priority (Non-Tax) Claims, (iv) initial payments due on

8

account of any Priority Tax Claims, and (v) any reserves necessary to administer the provisions of the Plan, in accordance with the provisions of the Plan.

5.06    On the Effective Date, or as soon thereafter as is reasonably practicable, the Post-Confirmation Debtors shall establish and maintain adequate reserves for Disputed Claims.

5.07    On the later to occur of (a) the Effective Date, and (b) the date such Claim becomes Allowed by a Final Order of the Bankruptcy Court, or as soon thereafter is reasonably practicable, the Post-Confirmation Debtors shall use available Cash to pay in full, or establish appropriate reserves for Allowed Administrative Expenses, including Allowed Fee Claims, as well as all Priority (Non-Tax) Claims, and any initial payments due on account of Priority Tax Claims, except as otherwise agreed to by the holder thereof and the Debtors.

5.08    Investments by the Post-Confirmation Debtors.    All Cash held by the Post-Confirmation Debtors, until the closing of these Chapter 11 Cases shall be invested in accordance with Bankruptcy Code § 345 in a financial institution that is an authorized depository of the Office of the U.S. Trustee for Region 2, or as otherwise permitted by a Final Order of the Bankruptcy Court.    The earnings on such investments shall be retained for the benefit of the holders of Allowed Class 2 Claims.

5.09    Delivery of Distributions.    Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim filed by such holder, or (b) the last known address of such holder if no proof of Claim is filed or if the Debtors or Post-Confirmation Debtors have been notified in writing of a change of address.

5.10    Undeliverable Distributions and Unclaimed Property. If any distribution is returned as undeliverable, the Post-Confirmation Debtors may, in their sole discretion, make such efforts to determine the current address of the Holder of the Claim with respect to which the distribution was made, but no distributions to any Holder of an Allowed Claim will be made until the Post-Confirmation Debtors have determined the current address of the Holder of such Allowed Claim, at which time the distribution will be made without interest. The Post-Confirmation Debtors shall have sole discretion to determine how to make distributions in the most efficient and cost-effective manner.    Amounts in respect of any undeliverable distributions made by the Post-Confirmation Debtors shall be returned to, and held in trust by, the Post-Confirmation Debtors, until the distributions are claimed, or are deemed to be Unclaimed Property upon the expiration of thirty (30) days from the date of the return of the undeliverable distribution. Unclaimed Property shall be utilized by the Post-Confirmation Debtors to make additional distributions in accordance with the provisions of the Plan. After the final distribution is made under the Plan, or after all Allowed Claims (including Allowed Administrative Claims) have been paid in full pursuant to the Plan, any Unclaimed Property shall be transferred to the Reorganized Debtors.

5.11    Record Date for Distributions.    Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the date of the entry of the Confirmation Order will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the date of the entry of the Confirmation Order. The Post-Confirmation Debtors shall have no obligation to recognize any transfer of any Claim occurring after the date of the entry of the Confirmation Order. In making any Distribution with respect to any Claim, the Post-Confirmation Debtors shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Person that is listed on the proof of Claim filed with respect thereto or on the Schedules as the holder thereof

SPG/1571982/063881

as of the close of business on the date of the entry of the Confirmation Order and upon such other evidence or record of transfer or assignment that are known to the Post-Confirmation Debtors as of the date of the entry of the Confirmation Order.

5.12    Distributions to Holders of Claims – Generally.

(a)    Distributions on Account of Allowed Claims Only.  Except as otherwise provided in this Plan, Disputed Claims shall not be entitled to any Distribution until such Disputed Claim becomes an Allowed Claim. All Claims of any Person from which property is sought by the Post-Confirmation Debtors, as applicable, under Bankruptcy Codes §§ 542, 543, 550, or 553, or that the Post-Confirmation Debtors allege is a transferee of a transfer that is avoidable under Bankruptcy Code §§ 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a), shall be disallowed if such Person or transferee has failed to turnover such property to the Post-Confirmation Debtors.

(b)    Method of Cash Distributions.  Any payment of Cash to be made pursuant to the Plan will be in U.S. dollars and may be made by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.

(c)    Distributions on Non-Business Days.  Any payment or Distribution due on a day other than a Business Day may be made, without interest, on the next Business Day.

(d)    No Distribution in Excess of Allowed Amount of Claim.  Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution (of a value set forth herein or in the Disclosure Statement) in excess of the Allowed amount of such Claim.

(e)    Interest on Claims.  Except as specifically provided for in the Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim. Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be allowed to the extent that it is for postpetition interest or other similar charges.

(f)    Disputed Payments.  If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Post-Confirmation Debtors may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account or hold such Distribution in reserve until the disposition thereof shall be determined by Bankruptcy Court order or by written agreement among the interested parties to such dispute.

(g)    Withholding Taxes.  Any federal or state withholding taxes or other amounts required to be withheld under any applicable law may be deducted and withheld from any Distributions under the Plan.  All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.  The Post-Confirmation Debtors may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid by the Post-Confirmation Debtors to the appropriate authority. If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within ninety (90) days after the date of first notification to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as Unclaimed Property herein or the amount required to be withheld may be so withheld and turned over to the applicable authority.

SPG/1571982/063881

(h)     Time Bar to Cash Payments by Check.  Checks issued by the Post-Confirmation Debtors on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Requests for the reissuance of any check that becomes null and void pursuant to this Section may be made directly to the Post-Confirmation Debtors by the holder of the Allowed Claim to whom the check was originally issued.  Any Claim in respect of such voided check must be made in writing, on or before the six (6) month anniversary of the date on which the Distribution was made.  After that date, all Claims in respect of voided checks shall be discharged and forever barred and the proceeds of those checks shall be deemed Unclaimed Property in accordance with Bankruptcy Code § 347(b) and be distributed as provided herein.

(i)     No Payments of Fractional Dollars.  Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

(j)     Minimum Distributions.  Notwithstanding anything herein to the contrary, the Post-Confirmation Debtors shall not be required to make distributions or payments of less than $10.00, and shall not be required to make partial distributions or payments of fractions of dollars. Any Holder of an Allowed Claim whose aggregate distribution under this Plan is less than $10.00 shall forfeit, at the option of the Post-Confirmation Debtors, such amount to, and such amount shall vest in, the Post-Confirmation Debtors for distribution in accordance with the terms of the Plan.  In the event that only *de minimis* assets remain in the Post-Confirmation Estates, such amounts shall revert to the Reorganized Debtors.

(k)     Setoff and Recoupment.  The Post-Confirmation Debtors may, but shall not be required to, setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature that the Debtors or the Estates may have against the holders of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, the Estates, the Post-Confirmation Debtors, or the Post-Confirmation Estates of any right of setoff, recoupment claims, rights or Avoidance Actions that the Debtors, the Estates, the Post-Confirmation Debtors, or the Post-Confirmation Estates, or any of their successors may possess against such holder. Any setoff or recoupment shall only be made after the affected creditor is provided not less than five (5) days notice.

5.13   Quarterly Reports.   Until the Chapter 11 Cases are closed, converted or dismissed, whichever is earlier, the Post-Confirmation Debtors shall file quarterly reports setting forth (a) the status of Distributions to holders of Allowed Claims and (b) progress implementing the Plan.  The quarterly reports shall be filed on or before the 15th day of July, October, January and April. In addition, the Post-Confirmation Debtors shall maintain an accurate register of the General Unsecured Claims.

5.14   Vesting of Assets. As of the Effective Date, pursuant to provisions of Bankruptcy Code §§ 1141(b) and (c), all property and assets of the Debtors, excluding the Cash portion of the CD Holdings Contribution, shall be transferred to and shall vest in the Reorganized Debtors free and clear of all Liens, Claims and Interests, except as otherwise expressly provided in this Plan and the Confirmation Order.

5.15   Debtors' Interest Holders.  From and after the Effective Date, subject to the Debtors' receipt of the Cash portion of the CD Holdings Contribution and payment thereof to the Post-Confirmation Debtors for Distribution under the Plan, (i) CD Holdings will hold one hundred (100%) percent of the interests in the Reorganized Debtor CD Stores, LLC, and (ii) Reorganized

SPG/1571982/063881

Debtor CD Stores, LLC will hold one hundred (100%) percent of the interests in the Reorganized Debtors CD Store 125th, LLC and CD Store Atlantic Terminal, LLC, as well as the remaining Post-Confirmation Debtors.

5.16    Administrative Consolidation of Debtors.  The Post-Confirmation Debtors' Estates shall be consolidated solely for purposes of administrative ease regarding claims processing and distributions under the Plan.

# ARTICLE VI

## EXECUTORY CONTRACTS AND LEASES

6.01    Any executory contract or unexpired lease of the Debtors CD Stores, LLC, CD Store 125th, LLC, and CD Store Atlantic Terminal, LLC, which has not been assumed or rejected by Final Order of the Bankruptcy Court, or which is not the subject of a pending motion to assume or reject on the Confirmation Date, shall be deemed assumed by those Debtors on the Effective Date.

6.02    Any executory contract or unexpired lease of the remaining Debtors which has not been assumed or rejected by Final Order of the Bankruptcy Court, or which is not the subject of a pending motion to assume or reject on the Confirmation Date, shall be deemed rejected on the Effective Date.

6.03    Any entity with a Claim that arises from the rejection of an executory contract or unexpired lease must file its Claim within thirty (30) days after the earlier of the date of the order rejecting the executory contract or unexpired lease and the Confirmation Date, and shall have the same rights as a Class 2 Claimant to the extent such Claim becomes an Allowed General Unsecured Claim.

# ARTICLE VII

## PROCEDURE FOR RESOLVING DISPUTED CLAIMS

7.01    <u>Disputed Claim Reserves</u>. The Post-Confirmation Debtors shall set aside and reserve for the benefit of each holder of a Disputed Claim, an amount equal to the Distributions to which the holder of such Disputed Claim would be entitled if such Disputed Claim were an Allowed Claim, in an amount equal to (i) the amount of such Claim as estimated by the Bankruptcy Court pursuant to an Estimation Order or (ii) if no Estimation Order has been entered with respect to such Claim, the greater of (x) the amount listed in the Schedules and (y) the amount set forth in a proof of claim or application for payment filed with the Bankruptcy Court or pursuant to an order of the Bankruptcy Court entered in the Chapter 11 Cases.  Such reserved amounts and the difference between the amount so reserved for each such Claim and the amount of federal, state and local taxes paid by the Post-Confirmation Debtors with respect to such Claim shall constitute the maximum Distribution amount to which the holder of such Claim may ultimately become entitled to receive.

7.02    <u>Distributions to Holders of Allowed Claims</u>. After the Effective Date, the Post-Confirmation Debtors shall make Distributions to holders of Allowed Claims in accordance with the Plan.

(i)    Distributions on Disputed Claims.  No Distributions shall be made with respect to a Disputed Claim until the resolution of such dispute by agreement with the Post-Confirmation Debtors, or Final Order.  On or as soon as reasonably practicable after the first Business Day of the next calendar quarter

SPG/1571982/063881

after a Disputed Claim becomes an Allowed Claim, the Post-Confirmation Debtors shall distribute to the holder thereof Cash, from the Disputed Claims Reserve, in an amount equal to the aggregate amount of Cash that would have been distributed to such holder in respect of such Claim had such Claim been an Allowed Claim, in the amount in which it is ultimately allowed.

(ii)     Treatment of Excess Cash in Disputed Claims Reserve.  To the extent a Disputed Class 2 Claim becomes a Disallowed Claim or is reclassified, any Cash previously reserved for such portion of such Disputed Claim shall deposited into the account maintained by the Post-Confirmation Debtors to be distributed in accordance with the Plan to holders of Allowed Class 2 Claims.

7.03    <u>Resolution of Disputed Claims</u>.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, after the Confirmation Date the Post-Confirmation Debtors shall have the right to make and file objections to all Claims, and shall serve a copy of each objection upon the holder of the Claim to which the objection is made, and the Office of the U.S. Trustee, as soon as practicable, but in no event later than the Objections Bar Date.  From and after the Confirmation Date, all objections shall be litigated to a Final Order except to the extent the Post-Confirmation Debtors elects to withdraw any claim objection, or the Post-Confirmation Debtors and the claimant elect to compromise, settle or otherwise resolve any claim objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim on reasonable written notice to the U.S. Trustee, without approval of the Bankruptcy Court.  A Disputed Claim as to which no objection is filed by the Objections Bar Date shall become an Allowed Claim.

7.04    <u>Procedure for Omnibus Objections to Claims</u>.  The Post-Confirmation Debtors are permitted to file omnibus objections to claims (an "**Omnibus Objection**") on any grounds, including but not limited to those grounds specified in Bankruptcy Rule 3007(d).  For claims that have been transferred, a notice shall be provided only to the person or persons listed as being the owner of such claim on the Debtors' claims register as of the date the Omnibus Objection is filed.  The notice shall include a copy of the relevant Omnibus Objection but not the exhibits thereto listing all claims subject to the objection thereby; rather, the notice shall (i) identify the particular claim or claims filed by the claimant that are the subject of the Omnibus Objection, (ii) provide a unique, specified and detailed basis for the objection, (iii) explain the proposed treatment of the claim, (iv) notify such claimant of the steps that must be taken to contest the objection, and (v) otherwise comply with the Bankruptcy Rules.

7.05    <u>Maintenance of Disputed Claims Reserve</u>.  To the extent that the property placed in a Disputed Claims Reserve consists of Cash, that Cash shall be deposited in an interest-bearing account in a financial institution that is an authorized depository in the Southern District of New York. The property in the Disputed Claims Reserve shall be held in trust for the benefit of the holders of Class 2 Claims which are ultimately allowed.  The Disputed Claims Reserve shall be closed and extinguished by the Post-Confirmation Debtors when all Distributions and other dispositions of Cash or other property required to be made hereunder from such reserves will have been made in accordance with the terms of the Plan.

## <u>ARTICLE VIII</u>

## <u>THE POST-CONFIRMATION DEBTORS</u>

8.01    Generally.   The powers, authority, responsibilities and duties of the Post-Confirmation Debtors are set forth in and will be governed by the Plan.

SPG/1571982/063881

8.02   Purpose of the Post-Confirmation Debtors.  The Post-Confirmation Debtors will exist for the primary purpose of administering the Plan after the Effective Date. The Reorganized Debtors will have no reversionary or further interest in or with respect to the Class 2 Payment upon its transfer to the Post-Confirmation Debtors.  The Post-Confirmation Debtors will make timely distributions to the Holders of Allowed Class 2 Claims pursuant to the Plan. The Post-Confirmation Debtors will not be deemed successors in interest of the Debtors for any purpose other than as specifically set forth herein.

8.03   Transfer of Assets to the Post-Confirmation Debtors.  As of the Effective Date, the Debtors will, transfer, assign and deliver to the Post-Confirmation Debtors, all of their rights, title and interest in the Cash portion of the CD Holdings Contribution. The Post-Confirmation Debtors will accept and hold the Cash portion of the CD Holdings Contribution in an account as set forth herein, to be used for Distributions under the Plan and the costs of administering the Plan.

8.04   Professionals; Exculpation. The Post-Confirmation Debtors may retain and compensate professionals, including professionals who have been or are currently retained as professionals of the Estates, without approval from the Bankruptcy Court.  The Post-Confirmation Debtors, their professionals, and their representatives will be exculpated pursuant to the terms of the Plan through the Effective Date, but in no event shall they be exulpated for any act or omission which constitutes gross negligence, willful misconduct, criminal conduct, breach of fiduciary duty, *ultra vires* actions, the disclosure of confidential information that causes damages, or the breach by an attorney of any obligations owed under Rule 1.8(h) of the New York State Rules of Professional Conduct which would give rise to malpractice liability.

8.05   No Agency Relationship.  The Post-Confirmation Debtors shall not be deemed to be the agent for any Claim holders in connection with the funds held or distributed pursuant to this Plan. The Post-Confirmation Debtors shall not be liable for any mistake of fact or law or error of judgment except for any act or omission which constitutes gross negligence, willful misconduct, breach of fiduciary duty, criminal conduct, *ultra vires* actions, the disclosure of confidential information that causes damages, or the breach by an attorney of any obligations owed under Rule 1.8(h) of the New York State Rules of Professional Conduct which would give rise to malpractice liability.

## ARTICLE IX

### RETENTION OF JURISDICTION

9.01   The Bankruptcy Court shall retain jurisdiction over the Post-Confirmation Debtors and the Chapter 11 Cases pursuant to chapter 11 of the Bankruptcy Code and for the purposes set forth in Bankruptcy Code § 1127(b), including, without limitation, with respect to the following matters:

(a)   to resolve any disputes concerning any funds held in the Disputed Claims Reserve;

(b)   to hear and determine all disputed issues relating to a security or ownership interest in any property of the Debtors' Estates or in any proceeds thereof;

(c)   to hear and determine all Claims arising out of any agreement entered into by the Debtors after the Petition Date;

(d)   to recover all assets and property of the Debtors wherever located;

SPG/1571982/063881

(e)     to alter, modify and amend the Plan pursuant to Bankruptcy Code § 1127 or to remedy any defect, cure any omissions, or reconcile any inconsistency in the Plan or Confirmation Order as may be necessary to carry out the purpose and intent of the Plan and to extent authorized by the Bankruptcy Code or Bankruptcy Rules;

(f)     to hear and determine such other matters as may be provided for in the Confirmation Order and for the purposes set forth in Bankruptcy Code §§ 1127(b) and 1142 or in Bankruptcy Rules 1019 and 3020(d);

(g)     to hear and determine all applications for compensation of professionals for services rendered and expenses incurred through the Confirmation Date and thereafter to hear and determine any objections to compensation of professionals;

(h)     to hear and determine any and all pending applications, adversary proceedings, contested matters and litigated matters;

(i)     to hear and determine any disputed issues with respect to the payments to be made under the Plan;

(j)     to enter orders that are necessary or appropriate to carry out the provisions of the Plan, including orders interpreting the provisions of the Plan;

(k)     to enter a Final Order or decree concluding the Debtors' Chapter 11 Cases; and

(l)     to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code.

## ARTICLE X

## CONFIRMATION AND THE EFFECTIVE DATE

10.01  Conditions Precedent to Confirmation. The following are the conditions precedent to the Confirmation of the Plan:

(a)     The Cash portion of the CD Holdings Contribution shall be deposited into a separate account maintained by the Post-Confirmation Debtors;

(b)     All terms, conditions and provisions of the Plan are approved in the Confirmation Order; and

(c)     The proposed Confirmation Order shall be in form and substance acceptable to the Debtors.

The conditions precedent set forth in subparagraphs (a), (b), and (c) above, may be waived by the Debtors.

10.02  Conditions Precedent to the Effective Date.  The following are the conditions precedent to the Effective Date of the Plan:

(a)     The Bankruptcy Court shall have entered the Confirmation Order and the Confirmation Order shall have become a Final Order; and

(b)     The Post-Confirmation Debtors shall have sufficient Cash to pay in full all Allowed Administrative Expenses, including Fee Claims (except to the extent that holders of Allowed Fee Claims agree to different treatment of their claims), Allowed Priority (Non-Tax) Claims and U.S. Trustee fees, and any initial payments due on account of Allowed Priority Tax Claims.

SPG/1571982/063881

# ARTICLE XI

## DISCHARGE OF CLAIMS, RELEASES AND EXCULPATION

11.01 **Interest Holders of the Debtors**. IN ACCORDANCE WITH THE PLAN, IN CONSIDERATION FOR THE CD HOLDINGS CONTRIBUTION, CD HOLDINGS SHALL RECEIVE 100% OF THE INTERESTS IN THE REORGANIZED DEBTOR CD STORES, LLC. IN ADDITION, ALSO IN ACCORDANCE WITH THE PLAN, IN CONSIDERATION FOR THE CD STORES CONTRIBUTION, REORGANIZED DEBTOR CD STORES, LLC SHALL RECEIVE 100% OF THE INTERESTS IN THE REORGANIZED DEBTORS CD STORE 125TH, LLC AND CD STORE ATLANTIC TERMINAL, LLC, AS WELL AS THE REMAINING POST-CONFIRMATION DEBTORS.

11.02 **Injunction**. EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE CONFIRMATION DATE, ALL PERSONS ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR PROCEEDING (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTORS, THE POST-CONFIRMATION DEBTORS, THE DEBTORS' PROPERTY OR THEIR ESTATES BASED ON ANY ACT, OMISSION, TRANSACTION, OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED ON OR BEFORE THE CONFIRMATION DATE, NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL ENJOIN THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY, FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDINGS (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTORS, OR ANY OF THE DEBTORS' OFFICERS, DIRECTORS, MEMBERS, EMPLOYEES, ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS, OR THE DEBTORS' PROPERTY, FOR ANY LIABILITY, INCLUDING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE OR LOCAL AUTHORITY. IN ADDITION, THE INJUNCTION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT.

11.03 **Release by the Debtors**. PURSUANT TO BANKRUPTCY CODE § 1123(b), AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, UPON THE EFFECTIVE DATE, THE DEBTORS SHALL RELEASE UNCONDITIONALLY, AND HEREBY ARE DEEMED TO FOREVER RELEASE UNCONDITIONALLY: (A) THE DEBTORS' ATTORNEYS; (B) CD HOLDINGS; (C) CD PRODUCT; AND (D) CD STORES, LLC (WITH RESPECT TO THE REMAINING DEBTORS) (COLLECTIVELY, THE "<u>RELEASED PARTIES</u>"), FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, RIGHTS, CAUSES OF ACTION AND LIABILITIES WHATSOEVER (EXCEPT FOR THE RIGHT TO ENFORCE THE PERFORMANCE OF THEIR RESPECTIVE OBLIGATIONS, IF ANY, UNDER THE PLAN), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE.

11.04 **Exculpation**. TO THE EXTENT PERMISSIBLE UNDER BANKRUPTCY CODE § 1125(e), THE DEBTORS SHALL NOT HAVE OR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR INTEREST FOR ANY ACT OR OMISSION DURING THE PENDENCY OF THE CHAPTER 11 CASES IN CONNECTION WITH, OR ARISING OUT OF, THE CHAPTER

SPG/1571982/063881

11 CASES, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN OR THE POST-CONFIRMATION DEBTORS OR THE PROPERTY OR CASH TO BE DISTRIBUTED UNDER THE PLAN; PROVIDED, HOWEVER, THAT THE FOREGOING EXCULPATION SHALL HAVE NO EFFECT ON THE LIABILITY OF AN ENTITY WHICH RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE RESULTED FROM GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, *ULTRA VIRES* ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES, AND, IN ALL RESPECTS, THE DEBTORS, AND EACH OF THEIR MEMBERS AND OFFICERS SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN.

11.05    **Releases by Holders of Claims Against Non-Debtors**. IN CONSIDERATION FOR (i) THE CD HOLDINGS CONTRIBUTION MADE BY CD HOLDINGS, (ii) THE CD STORES CONTRIBUTION MADE BY CD STORES, LLC, (iii) THE SUBORDINATION OF AFFILIATE CLAIMS HELD BY CD PRODUCT AND CD STORES, (iv) THE DUTIES PERFORMED BY THE OFFICERS, DIRECTORS, MEMBERS, EMPLOYEES, ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS OF THE FOREGOING ENTITIES DURING THE DEBTORS' CHAPTER 11 CASES TO REACH A SUCCESSFUL REORGANIZATION OF THE REORGANIZED DEBTORS, AND (v) THE DISTRIBUTIONS TO BE MADE UNDER THE PLAN, THE DEBTORS BELIEVE IT IS APPROPRIATE THAT THE PLAN PROVIDE RELEASES TO THE RELEASED PARTIES.

ALL HOLDERS OF CLAIMS <u>VOTING IN FAVOR OF THE PLAN AND NOT OPTING-OUT OF PROVIDING THIS RELEASE</u> SHALL BE DEEMED TO HAVE RELEASED AND FOREVER DISCHARGED THE RELEASED PARTIES  FROM ALL DEBTS, DEMANDS, ACTIONS, CAUSES OF ACTION, SUITS, ACCOUNTS, COVENANTS, CONTRACTS, AGREEMENTS, PROMISES, DAMAGES, CLAIMS AND LIABILITIES WHATSOEVER, KNOWN OR ON KNOWN, ARISING FROM A CLAIM OR BASED UPON THE SAME SUBJECT MATTER AS A CLAIM OR INTEREST AND EXISTING ON THE CONFIRMATION DATE BASED ON ANY FACT, TRANSACTION, CAUSE, MATTER OR THING WHICH OCCURRED PRIOR TO THE CONFIRMATION DATE, RELATING TO THE DEBTORS, THE PLAN OR THE CHAPTER 11 CASES, EXCEPT FOR THOSE CLAIMS ASSERTING GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, *ULTRA VIRES* ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES.

NOTHING CONTAINED HEREIN SHALL CONSTITUTE A RELEASE OF AN INDEPENDENT CLAIM HELD BY A CREDITOR OR INTEREST HOLDER AGAINST A NON-DEBTOR ENTITY OR PERSON BASED ON ACTS OR OMISSIONS UNRELATED TO THE DEBTORS OR THE CHAPTER 11 CASES.  IN ADDITION, NOTHING CONTAINED HEREIN OR IN THE PLAN SHALL RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES CONTAINED HEREIN AND IN THE PLAN.

THE RELEASES PROVIDED FOR IN THIS SECTION DO NOT RELEASE THE DEBTORS OR THE POST-CONFIRMATION DEBTORS OF ANY OF THEIR OBLIGATIONS FOR ANY PAYMENT UNDER THE PLAN.

NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL EFFECT A RELEASE OF ANY CLAIM BY THE UNITED STATES GOVERNMENT OR ANY OF ITS

SPG/1571982/063881

AGENCIES OR ANY STATE AND LOCAL AUTHORITY, INCLUDING, WITHOUT LIMITATION, ANY CLAIM ARISING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE AND LOCAL AUTHORITY AGAINST: (I) THE DEBTORS; (II) ANY OF THE DEBTORS' MEMBERS, SHAREHOLDERS, OFFICERS, DIRECTORS, EMPLOYEES, ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS; AND (III) THE RELEASED PARTIES. IN ADDITION, SUBJECT TO BANKRUPTCY CODE §§ 524 AND 1141, THE RELEASES DESCRIBED HEREIN SHALL NOT PRECLUDE POLICE, FEDERAL TAX, OR REGULATORY AGENCIES FROM FULFILLING THEIR STATUTORY DUTIES.

THE RELEASES DESCRIBED IN THIS SECTION ARE IN ADDITION TO, AND NOT IN LIEU OF, ANY OTHER RELEASE SEPARATELY GIVEN, CONDITIONALLY OR UNCONDITIONALLY, BY THE DEBTORS TO ANY OTHER PERSON. ANY RELEASE GIVEN BY THE DEBTORS OR A PERSON WHICH IS PART OF OR SUBJECT TO A FINAL ORDER OF THE BANKRUPTCY COURT, REMAIN IN FULL FORCE AND EFFECT AND ARE RATIFIED BY THE PLAN.

11.06   Persons or Entities Not Released by the Debtors.   Except for the releases contained in the Plan and the Confirmation Order, the Debtors and their Estates are not releasing any claims or actions against any Person, or their respective affiliates, assigns, agents, directors, officers, advisors, accountants, investment bankers, consultants, attorneys and other representatives of any of the foregoing.

11.07   Good Faith.   The entry of the Confirmation Order shall constitute the determination by the Bankruptcy Court that the Released Parties have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, pursuant to, among others, Bankruptcy Code §§ 1125(e) and 1129(a)(3), with respect to the foregoing.

SPG/1571982/063881

# ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.01   Headings.   The headings used in the Plan are inserted for convenience or reference only and are not part of the Plan.

12.02   Notices.  Notices shall be deemed given when received.  All notices, requests or demands described in or required to be made in accordance with the Plan shall be in writing and shall be delivered by overnight mail and email transmission as follows:

> (a)   If to the Debtors:
> SilvermanAcampora LLP
> 100 Jericho Quadrangle - Suite 300
> Jericho, New York 11753
> Attn: Gerard R. Luckman, Esq.
> (516) 479-6300
> GLuckman@silvermanacampora.com

> (b)   If to the Office of the U.S. Trustee:
> U.S. Federal Office Building
> 201 Varick Street
> New York, New York 10014
> Attn: Richard C. Morrissey, Esq.
> (212) 510-0500
> Richard.Morrissey@usdoj.gov

12.03   If to a holder of a Claim or Interest, at the address set forth in its proof of Claim or proof of Interest filed with and allowed by the Court, or, if none, at its address set forth in the Schedules prepared and filed by the Debtors with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

12.04   Change of Address.  Any of the parties identified in section 11.02 of the Plan may change the address at which it is to receive notices under the Plan by sending written notice pursuant to the provisions of this Article to counsel to the Post-Confirmation Debtors.

12.05   Modification of the Plan.  The Debtors reserve their right, in accordance with the Bankruptcy Code, to amend or modify the Plan prior to the Confirmation Date or as soon as practicable thereafter.  After the Confirmation Date, the Post-Confirmation Debtors may, upon appropriate motion and order of the Court, and after giving notice to the U.S. Trustee, in accordance with Bankruptcy Code § 1127(b), remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

12.06   Reservation of Rights.   Nothing contained herein shall prohibit the Post-Confirmation Debtors from prosecuting or defending any of the rights of the Debtors' Estates, including without limitation, the Avoidance Actions.

12.07   Payment Dates.  If payments or Distributions are due to be made under the Plan on a day other than a Business Day, such payment or Distribution shall instead be made, without interest, on the first (1st) Business Day immediately following the due date.  Payment

SPG/1571982/063881

shall be considered timely upon issuance of the check representing the payment, not the day it is received.

12.08 Severability. Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

12.09 Successors and Assigns. The rights and obligations of any entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

12.10 Governing Law. Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

12.11 Section and Article References. Unless otherwise specified, all references in the Plan to Sections and Articles are to Sections and Articles of the Plan.

Dated: New York, New York
     July 17, 2014

**CD STORES, LLC,** *et al.*

By:     */s/John D. Elmer*                 
Name:  John D. Elmer
Title:    Chief Financial Officer,
          Chief Operating Officer

SPG/1571982/063881